# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 14-0748V
### Filed: October 27, 2016
TO BE PUBLISHED

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| NICOLE SOLOMON, | * | |
| | * | |
| Petitioner, | * | |
| v. | * | Attorneys' Fees and Costs; |
| | * | Appropriate Hourly Rate; |
| SECRETARY OF HEALTH | * | Rate for Travel; Reasonable Basis; |
| AND HUMAN SERVICES, | * | Special Processing Unit ("SPU") |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

*Amber Wilson, Ph.D., Maglio, Christopher and Toale, PA, (DC), Washington, DC, for petitioner.*
*Linda Renzi, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

On August 19, 2014, Nicole Solomon ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act" or "Program"). Petitioner alleged that she suffered symptoms of dizziness, numbness, fatigue, tingling, and pain after receiving the influenza vaccine on September 20, 2011, and the tetanus, diphtheria, and pertussis ("TDP") vaccine on October 6, 2011. Petition at 1-2. Petitioner further alleged that her symptoms are "believed to be consistent with Guillain-Barré Syndrome" (*id.* at ¶ 6) and that her injuries are "causally connected to an adverse reaction" to her vaccinations (*id.* at ¶ 8). On December 2, 2015, the undersigned issued a decision denying petitioner's

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

claim for compensation and dismissing the case for insufficient proof.  (ECF No. 35).
Judgment entered on January 7, 2016.  (ECF No. 36).

On June 29, 2016, petitioner filed a motion requesting $16,812.70 in attorneys'
fees and $4,886.11 in attorneys' costs for a total amount of $21,698.81.  Motion for
Attorneys' Fees and Costs ("Pet. Motion") at ¶ 2 (ECF No. 39).  Petitioner incurred no
out-of-pocket expenses.[3]  For the reasons discussed below, the undersigned reduces
this amount and awards **$13,348.75** in attorneys' fees and **$4,869.22** in attorneys' costs
for a total of **$18,217.97** in attorneys' fees and costs.

## I.      Procedural History

Petitioner filed her petition on August 19, 2014, without all relevant medical
records due to the impending expiration of the Vaccine Act's statute of limitations.
Petition at ¶ 2.  The next day, petitioner filed some medical records.  *See* Exhibits 1-8
(ECF No. 5).  During the subsequent three to four month period, petitioner filed her
remaining medical records and affidavit.  *See* Exhibits 9-15 (ECF Nos. 8, 10-11, 14).
On December 1, 2014, petitioner filed her statement of completion.  (ECF No. 17).

On December 21, 2014, respondent filed a status report indicating her belief that
"settlement discussions [were] not appropriate."  Status Report at 1 (ECF No. 19).
Respondent argued that "petitioner's correct diagnosis is fibromyalgia syndrome and not
Guillain-Barré Syndrome."  *Id.*  On January 29, 2015, she filed her Rule 4(c) report
asserting that petitioner's claim should not be compensated.  (ECF No. 21).   Petitioner
was ordered to file the report of a medical expert.  *See* Order, issued Feb. 2, 2015 (ECF
No. 22).

During the subsequent five months, petitioner filed updated medical records and
a letter from one of her treating physicians (*see* exhibits 16-17), described in the billing
records as a narrative report (*see* exhibit 17 at 37).  She was given additional time to
discuss the possibility of settlement with respondent in light of the treating physician's
letter and to file an expert report addressing the issue of causation.  Instead, on July 21,
2015, petitioner filed a motion for a decision on the record pursuant to Vaccine Rule
8(d).  (ECF No. 30).  In her motion, petitioner indicated she "has filed all relevant
medical records and affidavits pertaining to this Petition and considers the evidentiary
record closed."  *Id.* at 1.  She further indicated that she "will not proffer the opinion of a
medical expert in support of vaccine causation of the injury alleged, and consequently
elects not to pursue a formal causation hearing with expert witness testimony."  *Id.* at 2.

Respondent filed her response approximately one month later (on August 24,
2015).  (ECF No. 32).  The undersigned dismissed petitioner's claim on December 2,
2015.  (ECF No. 35).

---

[3] In compliance with General Order #9, petitioner filed a signed statement indicating she incurred no out-of-pocket expenses.  *See* Exhibit 18, filed as an Attachment to Pet. Motion.  Additionally, in accordance with General Order #9, petitioner's counsel indicated in the motion for attorneys' fees and costs that petitioner incurred no out-of-pocket expenses.  *See* Pet. Motion at ¶ 3.

Petitioner filed her motion for attorneys' fees and costs on June 29, 2016. Respondent did not file a response to petitioner's motion.  The issue is ripe for adjudication.

## II.      Legal Standard for Determining the Amount of Fees and Costs

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorneys' fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed).  As Judge Lettow noted in *Davis*, "the Vaccine Program employs a liberal fee-shifting scheme."  *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012).  It may be the only federal fee-shifting statute that permits unsuccessful litigants to recover fees and costs.

However, "Congress did not intend that every losing petition be automatically entitled to attorneys' fees."  *Perriera v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994).  The Vaccine Act requires an unsuccessful litigant to establish that their petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought before attorneys' fees and costs may be awarded.  § 15(e)(1).

"[T]he 'good faith' requirement  . . . is a subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation."  *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Petitioners are entitled to a presumption of good faith.  *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996); *see also Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).

This presumption does not extend to reasonable basis which must be affirmatively demonstrated by the petitioner.  *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011).  "In contrast to the subjective standard afforded the 'good faith' requirement, the 'reasonable basis' requirement 'is objective, looking not at the likelihood of success [of a claim] but more to the feasibility of the claim.'"  *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma*, 1993 WL 496981, at *1).  "[R]easonable basis is an objective standard determined by the "totality of the circumstances" inquiry."  *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014).  It should not be rigidly applied.  *Id.* at 285; *see also Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012) (emphasizing that "[a] special master's determination . . . is entitled to deference").

After it has been determined that an award of attorneys' fees and costs is appropriate, the special master must determine the amount to be awarded.  As the

Federal Circuit noted, attorneys' fees and costs were "not expected to be high" due to the "no-fault, non-adversarial system" set forth in the Vaccine Act. *Saxton ex rel. v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993) (quoting H.R. REP. No. 99-908, at 36 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6377). Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)); *Saxton*, 3 F.3d at 1521. A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is very significantly lower than the forum rate. *Avera*, 515 F.3d at 1349. If these two requirements are met, the *Davis* exception applies, and petitioner's counsel is paid according to the local rate. *Id.*; *see Davis County Solid Waste Management and Energy Recovery Special Service District v. United States Environmental Protection Agency*, 169 F.3d 755 (D.C. Cir. 1999).

Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as fees. *See Perriera v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375. Reasonable expert costs are calculated using the same lodestar method as is used when calculating attorneys' fees. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009).

Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991). They are entitled to rely on their prior experience and, based on experience and judgment, may reduce the number of hours to an amount reasonable for the work performed. *Saxton*, 3 F.3d at 1521. A line-by-line evaluation of the billing records is not required. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam).

The petitioner "bears the burden of establishing the hours expended, the rates charged, and the expenses incurred." *Wasson*, 24 Cl. Ct. at 484. She "should present adequate proof [of the attorneys' fees and costs sought] at the time of the submission." *Id.* at 484 n.1. Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983).

### III.     Good Faith and Reasonable Basis

There is nothing in the record to indicate petitioner lacked the requisite good faith when filing her claim. Thus, the undersigned finds petitioner has satisfied the statutory requirement of good faith and turns to the issue of reasonable basis.

It is well established that claims filed on the eve of the expiration of the Vaccine Act's statute of limitations are subject to a more lenient standard when determining if

reasonable basis exists. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2008 WL 4793152, at *5 (Fed. Cl. Spec. Mstr. Jan. 9, 2008) (noting this "long recognized" proposition).  Petitioner's counsel in these cases often do not have the time needed to properly research petitioner's claim prior to filing the petition.[4]

However, this greater latitude should not be interpreted to allow for a finding of reasonable basis for every claim filed in this manner.[5]  Petitioner's counsel still is required to perform due diligence, given the available evidence and amount of time prior to the running of the statute of limitations.[6]  Furthermore, even though reasonable basis may exist at the time the petition is filed, it "may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent." *Chuisano*, 116 Fed. Cl. at 288; *see also Perriera*, 33 F.3d at 1377 (affirming the special master's finding that reasonable basis existed until the evidentiary hearing); *Hamrick*, 2008 WL 4793125, at *4 (observing that "[p]etitioner's counsel must review periodically the evidence supporting petitioner's claim").

In this case, the billing records establish that petitioner first contacted petitioner's counsel on August 6, 2014, and the petition was filed two weeks later, approximately one month before the expiration of the Vaccine Act's statute of limitations.  Exhibit 17 at 1.  It appears that petitioner's counsel had access to some of petitioner's medical records as they were filed one day after the petition.  *See* Exhibits 1-8 (ECF No. 5). Indeed, the billing records show that counsel spent 1.5 hours reviewing exhibits 1-6 and editing the petition on August 18, 2014, one day before the petition was filed.  Exhibit 17 at 1.  However, there is nothing in these medical records which would bring into question the feasibility of petitioner's claim.  *See Silva*, 108 Fed. Cl. 403 (noting the "red flag" contained in the medical records in that case).

---

[4] *See McNett v. Sec'y of Health & Human Servs.*, No. 99-684V, 2011 WL 760314, at *8 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) (finding a review of the billing records showed petitioner's counsel "had no time to request medical record, let alone any time to review [them]"); *Hamrick*, 2008 WL 4793125, at *6 (emphasizing respondent's failure "to recognize that the looming statute of limitations prevented a thorough examination of the case"); *Turner*, 2007 WL 4410030, at *5 (finding a claim filed on the eve of the running of the statute of limitations "may be supported by less information than would be expected if counsel had more time to conduct a pre-filing investigation of the factual underpinnings and the medical basis for a vaccine claim").

[5] "A looming statute of limitations does not forever absolve a petitioner from his or her obligation to proceed with a reasonable basis to support his claim, at least not if the petitioner hopes to recover any fees and costs." *Chuisano*, 116 Fed. Cl. at 287 (emphasis omitted).  "[T]he statute of limitations is a factor that may affect the reasonable basis analysis in appropriate circumstances."  *Id.*

[6] *See Simmons v. Sec'y of Health & Human Servs.*, --- Fed. Cl. ---, 2016 WL 5937825 (2016) (The special master erred in finding reasonable basis existed even when the petition was filed on the eve of the expiration of the statute of limitations. Although petitioner disappeared until the day before the petition was filed, he initially contacted petitioner's counsel more than 2 years prior to the expiration of the statute of limitations.); *Silva v. Sec'y of Health & Human Servs.*, No. 10-101V, 2012 WL 2890452, at *13 (Fed. Cl. Spec. Mstr. June 22, 2012), *aff'd* 108 Fed. Cl. 401 (2012) (finding "[t]he attorneys essentially did not investigate [petitioner's] case properly before filing it").

The billing records further establish that after the petition was filed, petitioner's counsel and paralegals at her firm worked diligently to obtain the remainder of petitioner's records in a timely fashion.  Exhibit 17 at 1-5.  Although some of these records did not support petitioner's claim (for example, her normal result from a December 5, 2011 EMG (exhibit 10 at 8)), at least one of petitioner's treating physicians (her allergist) questioned whether her symptoms could be attributed to Guillain-Barré Syndrome ("GBS") and considered whether she should receive any future influenza vaccinations (exhibit 7 at 10).  After respondent set forth her objections to petitioner's claim in her Rule 4 report, petitioner's counsel spent the next five months procuring updated medical records and a letter from Dr. McGarvey, a neurologist who began treating petitioner almost two years after her symptoms began.  *See* Exhibits 15-16. Counsel then requested additional time to discuss settlement with respondent and to file an expert report addressing the issue of causation. The billing records show that petitioner's counsel attempted to obtain an expert report.[7]  On July 21, 2015, petitioner moved for a ruling on the record without hearing.

Petitioner filed her claim on the eve of the expiration of the Vaccine Act's statute of limitations.  Subsequently, she pursued her claim in a timely manner and requested a ruling on the record when unable to produce additional evidence of her claim.  The undersigned finds petitioner had a reasonable basis to file her claim.  Furthermore, that reasonable basis continued through the conclusion of this case.  Thus, petitioner is entitled to an award of attorneys' fees and costs.

## IV.    Appropriate Amount of Attorneys' Fees and Costs

### A.  Appropriate Hourly Rates

Petitioner seeks attorneys' fees in the amount of $16,812.70 which reflects the following hourly rates:  $295 for work performed in 2014-15 and $301 for work performed in 2016 by petitioner's counsel, Amber Wilson, Ph.D., and $105 to $145 for work performed by various paralegals at petitioner's counsel's firm, Maglio, Christopher & Toale, PA ("the Maglio firm").  Exhibit 17 at 1-17.  Petitioner also seeks the full hourly rate for her attorney while traveling.  *Id.* at 6-7.

To support the hourly rates sought, petitioner has filed declarations from Ms. Wilson, and Altom Maglio, the managing partner at her firm.  *See* Exhibits 19-20, filed as Attachments to Pet. Motion (ECF No. 39).

### 1.  Hourly Rate for Petitioner's Counsel, Amber Wilson, Ph.D.

According to Ms. Wilson's declaration, she was admitted to practice in Florida on September 27, 2012.  Exhibit 19 at ¶ 2.  Prior to law school, she earned a masters

---

[7] Dr. Raji Grewal was paid $1,200 representing 3 hours of work at a rate of $400 per hour to review the medical records and formulate a medical opinion.  Exhibit 17 at 15, 40.  Since that medical opinion was never filed, the undersigned concludes either that Dr. Grewal opined petitioner's injuries were not vaccine caused or petitioner did not believe the report was sufficient evidence of her claim to warrant its filing.

degree in Genetics and a doctorate degree in Molecular and Cellular Pharmacology.  *Id.* at ¶¶ 5-6.  In 2013-14, she worked for approximately one year as a law clerk in the Office of Special Masters, U.S. Court of Federal Claims.  *Id.* at ¶ 10.  She joined the Maglio firm in 2014, and her practice consists primarily of Vaccine Program cases.  *Id.* at ¶¶ 11, 13.  As explained in Mr. Maglio's declaration, Ms. Wilson's rates were set by the law firm's fees committee in light of the court's recent decision in *McCulloch*.[8] Exhibit 20 at ¶ 14.

In the *McCulloch* case, Special Master Gowen exhaustively examined the question of appropriate hourly forum rates in the Vaccine Program following the breakdown of respondent's long standing agreement with petitioner's counsel in that case.  *See McCulloch*, 2015 WL 5634323, at *3-4 (for background information regarding these events).  Special Master Gowen determined the appropriate rates for the attorneys at that firm but also established tiered ranges of appropriate forum rates based on years of legal experience.  The reasoning and hourly rates set in *McCulloch* have since been widely followed.

After discussing the potential approaches to setting a forum rate and reviewing cases and material from both within and without the Vaccine Program, Special Master Gowen concluded in *McCulloch* that the following factors should be considered when determining the appropriate hourly rate: (1) the prevailing rate for comparable legal work in Washington, DC; (2) the prevailing rate for cases in the Vaccine Program; (3) the experience of the attorney(s) in question within the Vaccine Program; (4) the overall legal experience of the attorney(s); (5) the quality of work performed by the attorney(s) in vaccine cases; and (6) the reputation of the attorney(s) in the legal community and community at large. *McCulloch,* 2015 WL 5634323, at *17.  He calculated the following ranges for reasonable forum rates in Vaccine Program cases:

> $350 to $425 per hour for attorneys with 20 or more years of experience;
> $300 to $375 per hour for attorneys with 11 to 19 years of experience;
> $275 to $350 per hour for attorneys with eight to ten years of experience;
> $225 to $300 per hour for attorneys with four to seven years of experience; and
> $150 to $225 per hour for attorneys with less than four years of experience.

*Id.* at *19.  Special Master Gowen noted that "[t]he higher end of the range should be awarded to those with significant Vaccine Program experience who perform high quality legal work in vaccine cases."  *Id.*  He added that an attorney's level of experience may be increased for legal work performed during law school such as an internship in the Vaccine Program or prior judicial clerkship, especially for attorneys with experience of less than four years.  *Id.*  The undersigned finds the *McCulloch* decision, which is extensively reasoned, to be highly persuasive and adopts its reasoning, as well as the above ranges, for the instant analysis.

---

[8] *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  Although the parties in *McCulloch* did not seek review, much of the reasoning of the *McCulloch* decision was later examined approvingly in *Garrison v. HHS*, No. 14-762V, --- Fed. Cl. ---, 2016 U.S. Claims LEXIS 1274, (Fed. Cl. Aug. 17, 2016).

Since Ms. Wilson is located in the forum, Washington, DC, she is unquestionably entitled to forum rates. Thus, it is only necessary to determine her years of experience and hourly rate within the appropriate range considering the factors described by Special Master Gowen.  Ms. Wilson had two to three years of experience in 2014-15 and did not reach the four year level until 2016.  Nevertheless, petitioner requests an hourly rate of $295 for 2014-15 which is greater than the range proposed in *McCulloch* for an attorney with less than four years, $150 to $225 per hour.  Additionally, the rate requested by petitioner is higher than the rates awarded for three of the attorneys in *McCulloch*, all with greater legal experience than Ms. Wilson, five to seven years of experience.[9]

Although Ms. Wilson has an advanced degree and additional expertise due to her time as a law clerk, these factors influence the rate to be awarded within the appropriate range.  They do not warrant a move to a higher range.  Other attorneys having an advanced degree helpful to their work in vaccine cases have been awarded hourly rates consistent with the range appropriate for their years of experience.  *See, e.g.*, *Stanford v. Sec'y of Health & Human Servs.*, No. 14-1216V, 2016 WL 3176599 (Fed. Cl. Spec. Mstr. May 15, 2016) (awarding an hourly rate of $400 for an attorney with 20 years of experience and a medical degree, Dr. Firestone).

For work performed in 2016 by Ms. Wilson, petitioner requests an hourly rate of $301.  In 2016, Ms. Wilson moved into the next higher *McCulloch* range, four to seven years of experience.[10]  Although the rate requested is one dollar more than the maximum rate indicated for this range, it is within the range if the rates are adjusted upward by the 3.7 percent increase utilized by Special Master Gowen in *McCulloch*.

---

[9] Specifically, the following rates were awarded in the *McCulloch* decision:

| | |
|---|---|
| Kevin Conway (45 years legal experience, 26 years vaccine experience) | $415 |
| Ronald Homer (24 years legal experience, 22 years vaccine experience) | $400 |
| Sylvia Chin-Caplan (30 years legal experience, 22 years vaccine experience) | $400 |
| Christine Ciampolillo (6 years vaccine experience) | $300 |
| Amy Schwader (7 years vaccine experience) | $285 |
| Joseph Pepper (6 years legal experience, 5 years vaccine experience) | $290 |
| Meredith Daniels (5 years vaccine experience) | $280 |
| Law Clerks | $145 |
| Paralegals | $135 |

*McCulloch*, 2015 WL 5634323 at *19-21.

[10] Although Ms. Wilson reached this four year mark on September 27, 2016, the undersigned declines to penalize her for providing more accurate information than is often provided in these cases, i.e. the exact date of her licensure rather than simply the year.  Exhibit 19 at ¶ 2.  Going by the year of her licensure, Ms. Wilson is considered as being in the four to seven year range for work performed in 2016.

2015 WL 5634323, at *9, 16.  It would be, however, close to the maximum amount for that range.

Again, Ms. Wilson's advanced degree and experience as a law clerk warrant a higher rate within the *McCulloch* range corresponding to her level of experience. Additionally, Ms. Wilson consistently performs quality work as she did so in this case. Still, her level of experience is on the low end of this range.  While the undersigned finds she should be awarded a higher rate within the range, she should not yet receive the maximum amount allowable.

Considering Ms. Wilson's skill, experience, quality of work, and reputation and the undersigned's experience evaluating fee applications in Vaccine Act cases, the undersigned finds that the appropriate hourly rate for Ms. Wilson's work performed in 2014-15 is $225 and in 2016 is $275.

## 2.  Discounted Rate for Hours Spent Traveling

Petitioner seeks payment for travel time expended by Ms. Wilson to visit petitioner.  *See* Exhibit 17 at 6-7.  In his declaration, Mr. Maglio emphasizes the firm's policy of visiting petitioners in all cases, including contingency cases as well as vaccine cases.  Exhibit 20 at ¶ 8.  The undersigned notes that Ms. Wilson has reduced the fees and costs for this travel by combining several trips and splitting the hours and costs billed accordingly.  *See* Exhibit 17 at 6 (entry dated 1/19/15), 7 (entry dated 1/23/15), 15 (entries dated 1/26/15 and 2/17/15).  Counsel is commended for her efforts to reduce costs in these cases, and the undersigned finds this amount of time to be appropriate. However, petitioner seeks Ms. Wilson's full hourly rate for her travel time.  *See* Exhibit 17 at 6-7 (entries dated 1/19/15, 1/23/15, 1/23/15).  The undersigned finds that she should be awarded one-half of her normal rate for these hours.

In the Vaccine Program, special masters traditionally have compensated time spent traveling when no other work was being performed at one-half an attorney's hourly rate.  *See Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011); *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. Jul. 27, 2009); *English v. Sec'y of Health & Human Servs.*, No. 01-61V, 2006 WL 3419805, at *12-13 (Fed. Cl. Spec. Mstr. Nov. 9, 2006).  However, special masters should not use this rule as standard practice but rather "[e]ach case should be assessed on its own merits."  *Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 791 (2010).  "Even an automatic 50% award may be too high for an undocumented claim, given the possibility that an attorney may use the travel time to work on another matter or not to work at all while traveling."  *Id.*

The billing records in this case show that petitioner has appropriately separated time spent performing work from the entries related to travel.  Exhibit 17 at 7 (1st entry dated 1/23/15) (noting the entry did not include time spent performing other work which was billed separately).  Furthermore, these entries show sufficient detail for the

undersigned to discern the activities performed which are not the type to allow for simultaneously performed substantive work.  *See e.g.*, *Rodriguez*, 2009 WL 2568468, at *21 (compensating at one-half the attorney's rate when traveling by car).  The described tasks include driving to the airport, parking the car, riding on a shuttle, passing through security, and picking up a rental car.  Exhibit 17 at 6-7 (entries dated 1/19/15, 1/23/15, 1/23/15).  Since all travel occurred in 2015, petitioner will be awarded fees at a rate of $112.50 for this time, representing one-half of Ms. Wilson's 2015 rate, $225.

### 3.  Paralegal Rates

As indicated in Mr. Maglio's declaration, the paralegals who are Florida Registered Paralegals bill at a rate of $135 per hour, those who do not have this designation bill at a rate of $95 to $105, and paralegals working in the Washington, DC office bill at a rate of $145 per hour.  Exhibit 20 at ¶¶ 22, 24-25.  In this case, the majority of paralegal work was billed at a rate of $105 or $135.  Only two tasks, totaling .2 hours, were billed at a rate of $145.  Exhibit 17 at 4 (entries dated 10/15/14 and 10/17/14).

Two of my colleagues recently addressed the issue of paralegal rates for the Maglio firm.  *See Scharfenberger v. Sec'y of Health & Human Servs.*, No. 11-221V, 2015 WL 3526559 (Fed. Cl. Spec. Mstr. May 15, 2015), *aff'd* 124 Fed. Cl. 224 (2015); *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211 (Fed. Cl. Spec. Mstr. Apr. 28, 2015).  In *Scharfenberger*, the special master found the rates up to and including $125 to be appropriate but reduced all higher rates to that maximum amount.  2015 WL 3526559, at *10.  In *O'Neill*, the special master accepted all rates as reasonable, but the highest rate billed in that case was $135 per hour.  2015 WL 2399211, at *14.

The undersigned finds that the rates billed for paralegal work in this case are reasonable, and will compensate petitioner at those rates.

### B.  Appropriate Amount of Costs

Petitioner seeks payment for costs totaling $4,886.11 which includes a payment of $800 for the narrative report from Dr. McGarvey and $1,200 for a medical opinion from Dr. Raji Grewal.  *See* Exhibit 17 at 15-16, 37-40; *see also supra* note 7.  Petitioner has included the receipts or other documentation for the majority but not all of these costs.

"It is petitioners' burden to substantiate costs expended with supporting documentation such as receipts, invoices, canceled checks, etc."  *Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004).  Special masters, however, have awarded compensation for costs without documentation when "satisfied that the costs incurred were related to the proceedings . . . and were reasonable."  *Erickson v. Sec'y of Health & Human Servs.*, No. 96-361V, 1999 WL 1268149, at *8 (Fed. Cl. Spec. Mstr. Dec. 10, 1999); *see also*

*Ceballos*, 2004 WL 784910, at *13; *English*, 2006 WL 3419805, at *14-15 (allowing payment for computer research even though no documentation was provided).

In this case, petitioner has failed to provide receipts for four items, including $69.23 for lexis research in March 2015.  *See* Exhibit 17 at 15-16 (entries dated 12/4/14, 2/23/15, 3/2/15, and 12/31/15).  Petitioner has provided one receipt for $34.66 which cannot be matched with any entry which was billed.  *Compare* exhibit 17 at 41 *with id.* at 15-16.  Additionally, petitioner has provided documentation for the amounts paid to both Dr. McGarvey and Dr. Grewal.  Exhibit 17 at 37-40.  Dr. Grewal's invoice shows he spent two hours reviewing petitioner's medical records on February 13, 2015 and an additional hour on March 3, 2015 re-reviewing the records and formulating his medical opinion.  *Id.* at 40.  Dr. Grewal's rate is listed as $400 per hour.  *Id.*  A breakdown of hours expended by Dr. McGarvey was not provided, but the overall amount requested for her services is reasonable.

The undersigned finds the undocumented amounts and amounts paid to the experts in this case to be reasonable and related to the proceedings in this case.  Petitioner's costs are reduced, however, by $16.89 because it appears an incorrect amount was billed for Ms. Wilson's hotel stay on January 22, 2015.  *Compare id.* at 49 (showing a charge of $94.35 for the hotel room) *with id.* at 15 (3rd entry dated 2/17/15, showing a requested amount of $111.24).

## C. Amounts Deducted

Petitioner billed 40 hours of time for work performed by Ms. Wilson in 2014-15 at a rate of $295.  The undersigned has determined that an appropriate rate for Ms. Wilson's work in 2014-15 is $225.  Thus, petitioner's award is reduced by the resulting difference, **$2,800**.  Petitioner billed 2.7 hours at a rate of $301 and one hour at a rate of $295 for work performed by Ms. Wilson in 2016. Thus, petitioner's award is further reduced by the resulting difference, **$90.20.**

The undersigned also has determined that petitioner shall be paid for Ms. Wilson's time spent traveling at one-half of her normal hourly rate.  Petitioner billed for 5.1 hours of travel by Ms. Wilson in 2015.  Thus, petitioner's award is further reduced by **$573.75** to reflect the reduction in hourly rate from $225 to $112.50.  The total amount deducted from the amount of <u>attorneys' fees</u> requested by petitioner is **$3,463.95.**

As discussed in the above section, the amount of <u>attorneys' costs</u> requested by petitioner is reduced by **$16.89.**  Thus, the total amount deducted from the amount petitioner seeks for attorneys' fees and costs is **$3,480.84.**
The specific reductions are as follows:

**Attorneys' Fees:**

| Category of Hours | Hours Sought | Hours Paid | Rate Sought | Rate Paid | Amount Deducted | Amount Paid |
|---|---|---|---|---|---|---|
| 2014-15 Work by Ms. Wilson | 40 | 40 | $295 | $225 | $2,800 | $9,000 |
| 2016 Work - Ms. Wilson | 2.7 | 2.7 | $301 | $275 | $70.20 | $742.50 |
| 2016 Work - Ms. Wilson | 1 | 1 | $295 | $275 | $20 | $275 |
| Further Deduction for Travel Time | 5.1 | *Included in 40 above* | *$295 but already reduced to $225* | $112.50 | $573.75 | *Already included in $9,000 above* |
| Paralegal Work | | | $105 to $145 | $105 to $145 | $0 | $3,331.25 |
| | | | | | | |
| **Total for Fees** | | | | | $3,463.95 | **$13,348.75** |

**Attorneys' Costs:**

| Description | Amount Billed | Amount of Receipt | Amount Deducted | Amount Paid |
|---|---|---|---|---|
| Hotel Stay on 1/22/15 | $111.24 | $94.35 | $16.89 | $94.35 |
| Other Costs | | | $0.00 | $4774.87 |
| | | | | |
| **Total for Costs** | | | $16.89 | **$4,869.22** |

## V.    Conclusion

The undersigned has determined that an appropriate hourly rate for petitioner's counsel in this case, Dr. Amber Wilson of Maglio, Christopher & Toale, PA is $225 for work performed in 2014-15 and $275 for work performed in 2016. Additionally, the undersigned finds that counsel should be paid one-half of her normal rate for time spent traveling. Finally, the undersigned has adjusted the amount of costs requested to account for an apparent mistake made regarding the cost of a hotel stay on January 22, 2015.

The undersigned awards **$13,348.75** in attorneys' fees and **$4,869.22** in attorneys' costs for a total award of **$18,217.97[11] payable jointly to petitioner and petitioner's counsel, Amber Wilson.**

The clerk of the court shall enter judgment in accordance herewith.[12]

**IT IS SO ORDERED.**

<u>**s/Nora Beth Dorsey**</u>
Nora Beth Dorsey
Chief Special Master

---

[11] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir.1991).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.